UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

IRA LEE PARKER WILSON                          CIVIL ACTION NO. 14-0109

VERSUS                                         JUDGE S. MAURICE HICKS, JR.

SAMSON CONTOUR ENERGY                          MAGISTRATE JUDGE HAYES
E&P, LLC

<u>**MEMORANDUM ORDER**</u>

Before the undersigned magistrate judge, on reference from the District Court, is a

Motion for Expedited Discovery, [doc. # 13], filed by Plaintiff Ira Lee Parker Wilson.  Plaintiff

requests leave to propound six requests for admission, two interrogatories, and one request for

production of documents prior to conferring with Defendants as required by Rule 26(f).  For

reasons stated below, Plaintiff's Motion is **DENIED**.[1]

<u>**Background**</u>

Plaintiff filed suit against Defendant Samson Contour Energy E & P LLC in the 26th

Judicial District Court, Webster Parish, Louisiana on December 13, 2013.  [doc. # 1-2].  Plaintiff

alleges that Defendant failed to fully compensate her for the oil and gas that it obtained from her

four acre tract of land.  *Id.* at 1.  Defendant only paid Plaintiff for 17/48ths of the past oil and gas

production attributable to her four acres because, according to Plaintiff, it contends that she only

owns 17/48ths of the tract's mineral rights.  *Id.* at 3.

Plaintiff argues that she owns 100% of the mineral rights to the four acre tract.  *Id.*  She

---

[1] As this motion is not excepted within 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this order is issued under the authority thereof, and in accordance with the standing order of this Court.  Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

claims that she "purchased [the] four acre tract along with all mineral rights under said tract on or about May 30, 1981, from . . . the 'Harvey heirs.'"  *Id.*  Plaintiff acknowledges that an individual named Jack Harvey sold four separate mineral servitudes on the tract to W.M. Nicholson prior to her purchase, but claims that those servitudes "have long since prescribed."  *Id.* at 5.  She explains: "All four mineral servitudes prescribed after ten years passed from the date of the last Nicholson servitude which was created in June of 1950.  Plaintiff became the owner of 100% of all of the minerals under the said four acre tract in June of 1960.  The four Nicholson servitudes all prescribed because of a ten year gap of 'non-use' of the minerals."  *Id.*

She alleges that "no oil or gas well has ever been drilled <u>on</u> the surface of [her] four acre tract," but points out that "[i]t has been [Defendant's] continued argument that oil and gas production from several production units which included Plaintiff's four acre tract maintained all four of these Nicholson servitudes up to the present date without a ten year prescriptive gap."  *Id.* at 3, 6.  In response to Defendant's alleged argument, Plaintiff avers that prescription was never interrupted because no valid production units were ever created.  *Id.* at 6.  No valid units were created because, according to Plaintiff, no individual or entity ever filed any written unit declaration in the conveyance records, and even if an individual or entity did file a unit declaration, "it would not be valid as to Plaintiff's acreage because she did not sign or join in any such unit agreement."  *Id.*  In short, the two production units that Defendant allegedly relies on "to interrupt the ten year prescription period were actually never 'valid' units and thus did not and could not, as a matter of law, interrupt the prescriptive period on the four Nicholson servitudes . . . ."  *Id.*  As a result, Plaintiff seeks, *inter alia*, all amounts that Defendant owes "for her proportionate share of oil and gas production represented by her 100% ownership interest in

2

her said four acre tract . . . ."  *Id.* at 13.

On February 28, 2014, Defendant filed a Rule 12(b)(7) Motion to Dismiss for failure to join a necessary party, arguing that Plaintiff failed to join the putative owners of the four mineral servitudes.  [doc. # 7, p. 1].  Defendant argues that the putative owners of the mineral servitudes—sixteen individuals according to Defendant's search of the its own records—are necessary parties pursuant to Rule 19 because the outcome of the instant dispute depends upon who actually owns the rights to the minerals.  *Id.*  Defendant states, "Plaintiff claims to own 100% of the mineral rights affecting the Property, thus placing at issue the ownership and payment of the disputed 31/48ths interest."  [doc. # 7-1, p. 2].  Defendant explains:

> Plaintiff's ownership and accounting claims are based on its claim of ownership of the mineral rights that would have reverted to Plaintiff *if and only if* the four mineral servitudes, indeed, prescribed for non-use as Plaintiff claims. This claim is directly opposed to the position of the Servitude Owners that their servitudes have been maintained with no gaps of more than ten years in use thereof.  The question of actual ownership of the mineral rights of the Property must necessarily be adjudicated before the payment and accounting issues pled against [Defendant] are reached.

*Id.* at 7.  Thus, Defendant argues that a complete and equitable adjudication of the controversy is not possible unless the putative servitude owners are joined because the absent owners will be directly affected by a judgment in Plaintiff's favor.  *Id.* at 3.  Defendant also argues, "The failure to join the mineral servitude owners as parties . . . will [] leave [it], as an existing party, open to the substantial risk of incurring double, multiple, or inconsistent obligations due to the interest of the Servitude Owners."  *Id.* at 8.

On May 16, 2014, after Plaintiff responded to the Motion to Dismiss and after Defendant filed its subsequent Reply, Plaintiff filed the instant Motion for Expedited Discovery.  [doc. # 13].  Defendant opposes the Motion.

The matter is now before the Court.

<u>Analysis</u>

Plaintiff posits that her proposed expedited discovery will quickly resolve the issue presented in Defendant's Motion to Dismiss, which, according to Plaintiff, is dependent upon whether two oil and gas production units were properly created. *Id.* at 1. Plaintiff explains that Defendant's discovery responses will reveal that no production units were ever created, that prescription was not interrupted, that all prior servitude owners' interests have prescribed, and that there are, therefore, not any necessary parties to be joined. *Id.* at 1-3.

Federal Rule of Civil Procedure 26(d)(1) states, in relevant part, that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by . . . court order." While the Fifth Circuit has not adopted a standard to use when determining whether a party is entitled to conduct early discovery, the majority of courts utilize a "good cause" standard.[2] *See, e.g., BKGTH Prods., LLC v. Does 1-20*, 2013 WL 5507297, at *6 (E.D. La. Sept. 30, 2013); *Paul v. Aviva Life and Annuity Co.*, 2009 WL 3815949 (N.D. Tex. 2009); *Turner Indus. Grp., LLC v. Int'l Union of Operating Eng'rs., Local 450*, 2013 WL 2147515, at *3 (S.D. Tex. May 10, 2013); *Rodale, Inc. v. U.S. Preventive Med., Inc.*, 2008 WL 4682043 (E.D. Tex. Oct. 21, 2008). Courts utilizing the standard "examine the discovery request on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *BKGTH Prods., LLC*, 2013 WL at *5 (internal

---

[2] Other courts utilize a "preliminary-injunction-style" analysis. *See St. Louis Grp., Inc. v. Metals and Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) (discussing the differences between the "good cause" standard and the "preliminary-injunction style analysis," and choosing the former in light of the fact that a majority of courts utilize the "good cause" standard).

quotation marks omitted).

As evidenced by Rule 26(d)(1), "expedited discovery is not the norm," *St. Louis Grp., Inc. v. Metals and Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000), and courts only allow it in limited circumstances.  Courts have allowed early discovery "when there is some showing of irreparable harm," or when there is a risk that "evidence would be lost or destroyed . . . ." *BKGTH Prods., LLC*, 2013 WL at *5-6 (citing cases); *see, e.g., JP Morgan Chase Bank, N.A. v. Reijtenbagh*, 615 F. Supp. 2d 278, 282-83 (S.D.N.Y. 2009) (granting expedited discovery to plaintiffs to determine the location of missing art pledged as collateral for a promissory note worth fifty million dollars); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (granting expedited discovery so that Plaintiff could discover assets that Defendant had a strong incentive to hide).

Here, Plaintiff has not met her burden of establishing the good cause that would warrant this Court to permit deviation from the normal course of discovery.  As mentioned, Plaintiff essentially claims that the answers to her proposed discovery requests will reveal that Defendant has no evidence showing that there was ever a valid production unit created, that prescription was not interrupted, that she owns all of the mineral rights to the tract in question, and that, consequently, there are no necessary parties to be joined.  She claims that she must obtain answers to her discovery requests in order to respond to the issue that Defendant's Motion raises: "whether or not oil and gas production units . . . were valid producing units which would have interrupted the ten-year prescriptive period for non-use."  [doc. # 13-1, p. 1].  To the contrary, however, this is not an issue that Defendant raised; instead, Plaintiff raised this issue in her

5

Petition.  In fact, in her opposition to Defendant's Motion to Dismiss, plaintiff acknowledges that the "lawsuit turns on the issue of whether or not there was a use of any of these servitudes which would have continued them," and that "the crux of this case turns on the legal effect of the . . . Gas Units."  [doc. # 9, p. 1-2].  In effect, Plaintiff does not request expedited discovery to show that there are no putative servitude owners to be joined (i.e. Plaintiff does not simply seek to defeat Defendant's Motion), rather, she makes a veiled, premature attempt to show that she is the sole owner of the mineral rights and that she is ultimately entitled to relief.

Defendant's Motion raises a more narrow, albeit related issue.  Defendant does not move to dismiss Plaintiff's claims because Plaintiff does not own the entire tract; rather, Defendant recognizes the issue that Plaintiff raises in her Petition—whether or not there were valid production units created and, in turn, whether other putative mineral servitude owners' claims to the tract have prescribed—and argues that the putative servitude owners must be joined in order to fully adjudicate the issue.  Defendant seeks dismissal because it claims that there are persons claiming an interest in the tract and that disposing of the action in those persons' absence may impede their ability to protect their interests.  Defendant also claims that disposing of the action in their absence will leave it subject to a risk of incurring inconsistent obligations.  This is all to say that Defendant, in its Motion, does not necessarily argue that these putative owners have a *valid* claim to the mineral rights, it only argues that the owners do in fact have an interest and must be joined.

Plaintiff seeks to circumvent  Motion and proceed to the merits of the case.  Plaintiff essentially submits that the answers to her proposed discovery will resolve the instant suit. While this may be true, Plaintiff ignores the fact that there are other individuals who will be

adversely impacted if the instant suit is resolved in Plaintiff's favor.  In other words, she seeks to prove that the putative mineral servitude owners no longer retain ownership without giving the putative owners a chance to protect their interests.

Plaintiff makes little attempt to demonstrate that good cause exists for expedited discovery.  While she does argue that the discovery is limited and will not burden[3] Defendant, the Court agrees with Defendant in that, "if the fact that proposed discovery was not burdensome gave rise to 'good cause,' Rule 26(d)'s prohibition on discovery prior to a Rule 26(f) conference would be rendered meaningless because parties would simply request to propound simple discovery to an opposing party in every case."  [*See* doc. # 15, p. 5].

From what the Court can glean, Plaintiff seeks discovery only to effect a speedy resolution of the suit, and speedy resolution alone does not constitute good cause.  *See St. Louis Grp., Inc.*, 275 F.R.D. at 242 (reasoning that expedited discovery alone cannot constitute good cause because if it did it would "be the norm instead of the exception, and there would be no substantive purpose for Federal Rule 26(d)(1).").  Aside from that, Plaintiff fails to show that she is subject to irreparable harm or that she has any other pressing need for the discovery she seeks. Accordingly, Plaintiff fails to present the Court with any good reason to deviate from the normal course of discovery and to allow her to proceed with one-sided, expedited discovery.

---

[3] Of note, much of the discovery that Plaintiff seeks is accessible in the public records and is as available to Plaintiff as it is to Defendant.  For instance, Plaintiff asks Defendant to produce any documentary evidence showing that a declared unit was filed in the conveyance records.  [doc. # 13-2, p. 1].  She also asks, "If you contend that any unit or declared unit has been filed in the conveyance records . . . please give the name of the unit, the date it was filed . . . and give the book and page and registry number where it was filed."  *Id.*  On this score, the Court declines to order Defendant to research the conveyance records for Plaintiff.

## <u>Conclusion</u>

For the reasons stated above, Plaintiff's Motion for Expedited Discovery, [doc. # 13], is

**DENIED**.  Plaintiff can proceed with discovery after the parties' Rule 26(f) conference.

In Chambers, Monroe, Louisiana, this 30th day of June, 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE