## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

IRA LEE PARKER WILSON                          CIVIL ACTION NO. 14-0109

VERSUS                                         JUDGE S. MAURICE HICKS, JR.

SAMSON CONTOUR ENERGY E&P,                     MAGISTRATE JUDGE HAYES
L.L.C.

### MEMORANDUM RULING

Before the Court is Defendant Samson Contour Energy E&P, L.L.C.'s ("Samson

Contour Energy") Rule 12(b)(7) Motion to Dismiss for Plaintiff's Failure to Join a Party

under Rule 19. See Record Document 7. Samson Contour Energy argues that Plaintiff Ira

Lee Parker Wilson ("Wilson") failed to join parties whose interests in the subject matter are

so interrelated, and would be so directly affected by the judgment, that a complete and

equitable adjudication of the controversy cannot be made unless such persons are joined

in the action. See id. Thus, Samson Contour Energy seeks dismissal of Wilson's claims.

See id. Alternatively, Samson Contour Energy requests that the complaint must be

amended to add additional parties and cure its pleading defects. See id.

Wilson has opposed the motion, arguing that complete relief is possible among the

existing original parties. See Record Document 9 at 4. Alternatively, Wilson requests that

"if the Court refuses to deny defendant's motion, plaintiff then requests she be allowed a

reasonable time to file an amending pleading adding the sixteen parties which are claimed

by Samson [Contour Energy] to be indispensable." Id. at 9.

For the reasons which follow, the Rule 12(b)(7) Motion to Dismiss is **GRANTED IN**

**PART AND DENIED IN PART**. Samson Contour Energy's request for dismissal is

**DENIED**. However, its alternative request for the complaint to be amended to add

additional parties and cure its pleading defects is **GRANTED**.

## BACKGROUND[1]

Wilson filed suit against Samson Contour Energy in the 26th Judicial District Court, Webster Parish, Louisiana on December 13, 2013.  See Record Document 1-2.  Wilson alleges that Samson Contour Energy failed to fully compensate her for the oil and gas that it obtained from her four acre tract of land.  See id. at 1.  Samson Contour Energy only paid her for 17/48ths of the past oil and gas production attributable to her four acres because, according to Wilson, Samson Contour Energy contends that she only owns 17/48ths of the tract's mineral rights.  See id. at 3.

Wilson argues that she owns 100% of the mineral rights to the four acre tract.  See id.  She claims that she "purchased [the] four acre tract along with all mineral rights under said tract on or about May 30, 1981, from . . . the 'Harvey heirs.'"  Id.  Wilson acknowledges that an individual named Jack Harvey sold four separate mineral servitudes on the tract to W.M. Nicholson prior to her purchase, but claims that those servitudes "have long since prescribed."  Id. at 5.  She explains:  "All four mineral servitudes prescribed after ten years passed from the date of the last Nicholson servitude which was created in June of 1950. [Wilson] became the owner of 100% of all of the minerals under the said four acre tract in June of 1960.  The four Nicholson servitudes all prescribed because of a ten year gap of 'non-use' of the minerals."  Id.

Wilson alleges that "no oil or gas well has ever been drilled on the surface of [her]

---

[1]The background section is drawn from Magistrate Judge Hayes' Memorandum Order of June 30, 2014, wherein Wilson's Motion for Expedited Discovery was denied.  See Record Document 16.

four acre tract," but points out that "[i]t has been [Samson Contour Energy's] continued argument that oil and gas production from several production units which included [Wilson's] four acre tract maintained all four of these Nicholson servitudes up to the present date without a ten year prescriptive gap." Id. at 5, 6.  In response to Samson Contour Energy's argument, Wilson avers that prescription was never interrupted because no valid production units were ever created.  Id. at 6.  No valid units were created because, according to Wilson, no individual or entity ever filed any written unit declaration in the conveyance records, and even if an individual or entity did file a unit declaration, "it would not be valid as to [Wilson's] acreage because she did not sign or join in any such unit agreement." Id.  In short, the two production units that Samson Contour Energy allegedly relies on "to interrupt the ten year prescription period were actually never 'valid' units and thus did not and could not, as a matter of law, interrupt the prescriptive period on the four Nicholson servitudes." Id.  As a result, Wilson seeks, *inter alia*, all amounts that Samson Contour Energy owes "for her proportionate share of oil and gas production represented by her 100% ownership interest in her said four acre tract." Id. at 13.

On February 28, 2014, Samson Contour Energy filed a Rule 12(b)(7) Motion to Dismiss due to Wilson's failure to join the putative owners of the four mineral servitudes. See Record Document 7.  Samson Contour Energy argues that the putative owners of the mineral servitudes—16 individuals according to Samson Contour Energy's search of its own records—are necessary parties pursuant to Rule 19 because the outcome of the instant dispute depends upon who actually owns the rights to the minerals.  See id. Samson Contour Energy states, "[Wilson] claims to own 100% of the mineral rights affecting the Property, thus placing at issue the ownership and payment of the disputed

31/48ths interest."  Record Document 7-1 at 2.  Samson Contour Energy explains:

> [Wilson's] ownership and accounting claims are based on its claim of ownership of the mineral rights that would have reverted to [Wilson] if and only if the four mineral servitudes, indeed, prescribed for non-use as [Wilson] claims. This claim is directly opposed to the position of the Servitude Owners that their servitudes have been maintained with no gaps of more than ten years in use thereof. The question of actual ownership of the mineral rights of the Property must necessarily be adjudicated before the payment and accounting issues pled against Samson [Contour Energy] are reached.

Id. at 7.  Thus, Samson Contour Energy argues that a complete and equitable adjudication of the controversy is not possible unless the putative servitude owners are joined because the absent owners will be directly affected by a judgment in Wilson's favor.  See id. at 3. Samson Contour Energy also argues, "The failure to join the mineral servitude owners as parties . . . will [] leave [it], as an existing party, open to the substantial risk of incurring double, multiple, or inconsistent obligations due to the interest of the Servitude Owners." Id. at 8.

## LAW AND ANALYSIS

### I.    Rule 12(b)(7) and Rule 19 Standards.

Rule 12(b)(7) allows dismissal for failure to join a party under Rule 19.  Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue.  It also provides for the dismissal of the suit if it should not proceed without the parties who cannot be joined.  See HS Resources, Inc. v. Wingate, 327 F.3d 432, 438 (5th Cir.2003).  The relevant text of Rule 19 provides:

> (a)    Persons Required to Be Joined if Feasible
>
> (1)    Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A)   in that person's absence, the court cannot accord complete relief among existing parties; or

(B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i)   as a practical matter impair or impede the person's ability to protect the interest; or

(ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2)   Joinder by Court Order.  If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

* * *

(b)   When Joinder Is Not Feasible.  If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:

(1)   the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2)   the extent to which any prejudice could be lessened or avoided by:

(A)   protective provisions in the judgment;

(B)   shaping the relief; or

(C)   other measures;

(3)   whether a judgment rendered in the person's absence would be adequate; and

(4)   whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

The Rule 19 analysis requires the court to first determine under Rule 19(a) whether a person should be joined to the suit.  If the person should be joined, but his joinder would destroy jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the suit.  See HS Resources, Inc., 327 F.3d at 439.

## II.   Analysis.

Samson Contour Energy moves to dismiss Wilson's lawsuit for failure to join the purported mineral owners against whom Wilson claims to have acquired certain mineral rights by virtue of the prescription of non-use, resulting in a reversion of certain mineral rights to Wilson.  See Record Document 7.  It argues that to the extent that Wilson is seeking a declaration of mineral ownership that relies upon the expiration of mineral rights held by others, then the putative servitude owners against whom Wilson seeks to acquire those mineral rights are parties needed for a just adjudication.  At the outset, the Court notes that Wilson admits in her petition that "the key issue in this lawsuit" is the dispute as to whether the four Nicholson servitudes have been maintained due to production or have been prescribed due to non-use.  See Record Document 1-2 at ¶¶ 20-21.  Likewise, in opposing the instant motion, Wilson concedes that "this lawsuit turns on the issue of whether or not there was a use of any of these servitudes which would have continued them."  Record Document 9 at 1.

The first sentence of Rule 19(a)(1) includes the phrase, "a person . . . whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party."  Here, the record reflects that Wilson is a citizen and resident of Los Angeles, California.  See Record Document 1 at 2; Record Document 1-2.  Samson Contour Energy is a limited liability

company whose sole member is Samson Contour Energy Co., a Delaware corporation with its principal place of business in Oklahoma.  <u>See</u> Record Document 1 at 2; <u>see also</u> <u>Harvey v. Grey Wolf Drilling Co.</u>, 542 F.3d 1077, 1080 (5th Cir. 2008) ("the citizenship of a LLC is determined by the citizenship of all of its members").  Samson Contour Energy is, therefore, a citizen of Delaware and Oklahoma.  Thus, there is complete diversity between Wilson and Samson Contour Energy.

Samson Contour Energy has listed the 16 putative servitude owners that "will be directly affected by a judgment in this case regarding the mineral ownership of the property."  Record Document 7-1 at 3-4.  Yet, the citizenship of these parties is not set forth in the record.  Samson Contour Energy does list the mailing address for one of the parties as a post office box in Benton, Arkansas.  <u>See id.</u> at 3.  Yet, the mailing address is simply an indication of residency, not domicile.  <u>See</u> <u>Combee v. Shell Oil Co.</u>, 615 F.2d 698, 700 (5th Cir. 1980) ("For purposes of diversity jurisdiction, the domicile of the parties, as opposed to their residence, is the key.").  Therefore, as the record stands, this Court has no way to determine whether the joinder of these sixteen parties would deprive the court of subject matter jurisdiction, as required by Rule 19(a)(1).[2]

Notwithstanding, the Court will continue its analysis of Rule 19(a)(1).  At the outset, this Court believes that in the absence of the putative servitude owners, it cannot accord complete relief among Wilson and Samson Contour Energy.  Wilson claims to own 100% of the mineral rights.  Samson Contour Energy denies this allegation and contends that the Nicholson servitudes are still in place.  Thus, the question of actual ownership of the

---

[2]As set forth *infra*, this information would likewise be needed for analysis under Rule 19(b).

mineral rights must necessarily be adjudicated before the payment and accounting issues pled against Samson Contour Energy are resolved.

Additionally, the Court found guidance in El Paso E&P Co., LP v. Crabapple Properties, Ltd., No. 07-0428, 2008 WL 2051109 (W.D. La. Mar. 6, 2008), wherein the central question was whether a servitude had prescribed by non-use.  As mentioned previously, whether the Nicholson servitudes prescribed by non-use is the critical issue in the instant matter.  In deciding El Paso, the Court reasoned:

> That issue, as explained above, is of significant importance to the other landowners whose property is ostensibly subject to the servitude, which separates the landowners from any mineral rights associated with their property.  The first requirement of Rule 19(a)(1)(B) is that the absent person "claims an interest relating to the subject of the action . . . ."  None of the absent landowners may be actively asserting a demand, but each of them, by virtue of ownership of the land and the value of regaining mineral interests, implicitly claims an interest relating to the subject of this action.

Id. at *8.  This Court concluded in El Paso that the  absent landowners claimed an interest relating to the subject of the action.  The same holds true for the instant matter.

The Court further finds that the next requirement of Rule 19(a)(1)(B), i.e., that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest, is also satisfied here.  See Schutten v. Shell Oil Co., 421 F.2d 869, 874-875 (5th Cir. 1970) (reasoning that a judgment may prejudice an absent party even though that party is not bound by the judgment in the *res judicata* sense).  This Court's judgment, although not binding in the *res judicata* sense if the putative servitude owners were not joined, would nonetheless constitute precedent adverse to their potential claims regarding the viability of the Nicholson servitudes.  Finally, adjudication without the putative servitude owners could leave Samson Contour Energy subject to a

substantial risk of incurring double, multiple, or otherwise inconsistent obligations due to the interests of the putative servitude owners, who could later attempt to claim their proportionate share of the mineral production attributable to the property.  See Record Document 7-1 at 8.

After consideration of all of the Rule 19(a)(1) factors, this Court finds that the putative servitude owners should be joined as parties in this case.  As stated previously, this Court is unable to determine if the addition of the 16 putative servitude owners will destroy diversity jurisdiction.  For this reason, analysis under Rule 19(b) is not possible, as this Court does not know "if a person who is required to be joined if feasible *cannot be joined*" at this stage.  Therefore, in exercising its judicial discretion, the Court finds that Samson Contour Energy's motion should be **GRANTED IN PART AND DENIED IN PART**. The motion is **DENIED** as to Samson Contour Energy's request for dismissal of the action. However, Samson Contour Energy's request for alternative relief is **GRANTED** and Wilson is hereby **ORDERED** to amend and supplement her pleadings to add the 16 putative servitude owners as parties to the instant lawsuit, as this Court believes the putative servitude owners satisfy all of the Rule 19(a)(1) requirements.[3]

## CONCLUSION

For the reasons set forth above, Samson Contour Energy's Rule 12(b)(7) Motion to Dismiss for Plaintiff's Failure to Join a Party under Rule 19 is **GRANTED IN PART AND DENIED IN PART**.  Wilson failed to join the 16 putative servitude owners whose interests

---

[3]Again, it is unclear if the addition of the 16 putative servitude owners will destroy diversity jurisdiction.  The Court's subject matter jurisdiction can be assessed after the addition of the new parties, as "a litigant generally may raise a court's lack of subject-matter jurisdiction at any time."  Kontrick v. Ryan, 540 U.S. 443, 455, 124 S. Ct. 906, 915 (2004).

in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless such persons are joined in the action.  Samson Contour Energy's motion is **DENIED** as to the request for dismissal.  The motion is **GRANTED IN THE ALTERNATIVE** and Wilson is hereby **ORDERED** to amend and supplement her pleadings to add the 16 putative servitude owners as parties to the instant lawsuit.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 9th day of December, 2014.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE